### SHARP *vs.* TRIMMER.

1. Where, by the terms of a contract for the purchase of lands, the deed was to be delivered and possession given on a day named, and on that day the vendee took possession of the premises, but, by mutual consent, the delivery of the deed was postponed to a future day, and on that day a disagreement arose as to the terms of payment of part of the purchase money, by which the delivery of the deed was prevented, and subsequently the vendor offered the deed upon the terms of payment which the vendee himself had required on the day when the deed, by mutual consent, was to have been delivered, and the vendee still continues in possession, equity will compel him to comply with the terms which he acknowledges were agreed on.

2. In such case, time is not of the essence of the contract, in such manner as to relieve the vendee from its performance, where he has suffered no loss, even though the original default was on the part of the vendor in not accepting certain notes agreed upon as a substitute for cash.

3. A dower right in the land, known by the vendee to exist when he executed the contract, will not relieve him from his obligation; it was understood that he was to take the title so charged.

4. Under the circumstances of the case, costs disallowed.

The argument was upon the pleadings and proofs.

*Mr. Allen,* for complainant.

*Mr. Van Fleet,* for defendant.

THE VICE-CHANCELLOR.

The defendant, by a contract in writing of January 24th, 1871, with his brother-in-law, the complainant, agreed to purchase of the latter his farm in the county of Morris. The deed was to be delivered and possession given on the first of the following April. On that day the complainant, whose residence was on the farm, moved off, and the defendant took possession. By mutual consent the delivery of the deed was postponed till the fourth of that month. On the fourth a disagreement between them, as to the manner and terms of the payment of a portion of the purchase money, prevented the delivery of the deed. The defendant retained possession of the premises, but claimed that the contract had not been fulfilled by the complainant on the fourth, as agreed between them. Repeated attempts were afterwards made by the complainant to come to terms with the defendant, at one of which, on the 20th of September, 1871, he sent his brother to offer the deed upon the particular terms and methods of payment which the defendant, on the 4th of April, had required. The defendant refused to accept, and put his refusal on the ground that the time had gone by, and that he was, therefore, absolved from his bargain. He still held possession of the farm. On the 31st of October, 1871, the

bill was filed for specific performance, and the cause has been argued on the pleadings and proofs.

The controversy has arisen from differences between the parties, altogether inadequate to justify the dissensions it has occasioned. The parties themselves, and not a few of their relatives or friends, were examined as witnesses. The intelligence and truthfulness that characterized the testimony on both sides, leave little if any room for dispute in regard to the facts. It would answer, as I see, no useful or desirable end to go now into the details of the case. They were minutely and thoroughly investigated in examining the witnesses; and at the argument all the points that could plausibly be urged were strenuously urged on behalf of the defendant, but the points themselves were necessarily fine— in my judgment, *apices juris*—and are unavailing to withstand and defeat the substantial equities by which the complainant's case is supported.

The terms of payment set out in the contract require most of the purchase money in cash, but by an understanding between the parties, certain promissory notes, held then and still held by defendant, were to be taken as cash. The complainant, shortly after the contract, became afraid of the notes, and at the time of delivering the deed demurred to them. In this he was at fault, but in connection with what before and afterward occurred, this fault does not deprive him of the aid he now asks. Between January 24th and the 1st of April, when the deed was to pass, the complainant and defendant talked of these notes, and the defendant became aware of the complainant's reluctance to take them, but he made arrangements to go into possession; the complainant sold out his farming implements and stock, hired another house, and on the 1st of April moved into it to become employed in a different way. It is proved that the defendant grew tired of the bargain before the 1st of April, and asked the complainant to release him, offering to pay him for doing so. This circumstance is made much of against him; and on the other side it was objected to the conduct of the complain-

ant, that he sought to take advantage of the defendant's position and of the words of the contract, to extort from the latter better terms than he was bound in good faith to accept. I think, however, that neither of these objections is very important as bearing on the question of the defendant's obligation in equity, to take his deed and consummate the bargain on the terms and conditions which he himself says were the ones agreed on. He stands on the strict question of time, and under all the facts of the case he cannot prevail. The question of time was not an element of the contract in such a sense as to discharge him from taking the deed and complying on his part with the terms of payment, as he states them. He took everything but the deed. He took the land, and so far as appears has it yet. The difference between that which the defendant was willing to give and what the complainant was willing to take instead of the cash, was exceedingly slight, in fact purely formal. But still the complainant admits that he hesitated to accept the identical notes agreed on as a substitute for cash. To this extent he was at fault. But the duty of the defendant to close with the complainant when the latter tendered himself ready to accept the identical terms on which the defendant had vigorously insisted, cannot, in my judgment, be successfully denied in the face of the facts that the farm itself passed into his possession and control, and that he suffered no loss by the lapse of time, which was not of the essence of the contract.

The alleged interest or dower right of complainant's mother in the farm, has been urged as a reason against a decree in his favor. This objection was not taken when it would have been taken if the defendant had attached to it the slightest importance. The situation of the title was perfectly known to him when he executed the contract. It was well understood that he took the title in that respect as it was. The mother of the complainant is the mother of the wife of the defendant. She is very old, and ample provision exists for her dower, irrespective of her alleged lien on this land. It exists under a family arrangement, of which the defendant

was fully informed and to which he was a party. Her formal release could no doubt be at once secured if requested, or even unobjected to by the defendant and his wife. I cannot doubt this from the evidence. There is nothing substantial or equitable in this point of defence.

The only point I have doubts of is that of costs, but taking into consideration the nature and circumstances of the differences out of which the controversy has arisen, I think costs should be disallowed. The defendant, upon being tendered a proper conveyance of the land, must assign or transfer to the complainant the securities and pay him the money which he admits were to be assigned and paid on the 4th of April, 1871. Interest is to accrue from the last date. If by any change of the securities or other cause the general direction here given in regard to the decree should not prove sufficient to secure a final adjustment between the parties, I will, upon application of either party and notice to the other by the one applying, make such further directions as may be needed.

I advise a decree for specific performance, as above.